Bacchus-Sirju v Hollis Women's Ctr. (2021 NY Slip Op 04538)





Bacchus-Sirju v Hollis Women's Ctr.


2021 NY Slip Op 04538


Decided on July 28, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 28, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
COLLEEN D. DUFFY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.


2018-10993
 (Index No. 702350/12)

[*1]Natasha Zamena Bacchus-Sirju, etc., respondent,
v
Hollis Women's Center, et al., appellants, et al., defendants.


Kelly, Rode and Kelly, LLP (Mauro Lilling Naparty, LLP, Woodbury, NY [Caryn L. Lilling and Anthony F. DeStefano], of counsel), for appellants.
Silberstein, Awad & Miklos, P.C. (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac and Kenneth J. Gorman], of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice and wrongful death, the defendants Hollis Women's Center, Herbert J. Mosberg, and New York Hospital Medical Center of Queens appeal from a judgment of the Supreme Court, Queens County (Allan B. Weiss, J.), entered August 8, 2018. The judgment, upon a jury verdict in favor of the plaintiff on the issue of liability and awarding the plaintiff the principal sums of $2,000,000 for the decedent's pain and suffering, $1,000,000 for past pecuniary loss sustained by the decedent's two children ($500,000 each), and $50,000 for future pecuniary loss for the decedent's two children ($25,000 each), and upon an order of the same court dated May 16, 2018, among other things, denying the motion of the defendants Hollis Women's Center, Herbert J. Mosberg, and New York Hospital Medical Center of Queens pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law, or in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial, or, in the alternative, to set aside, as excessive, the verdict on the issue of damages, is in favor of the plaintiff and against those defendants in the total sum of $3,825,085.38.
ORDERED that the judgment is modified, on the facts and in the exercise of discretion, by deleting the provision thereof awarding the plaintiff the principal sum of $1,000,000 for past pecuniary loss sustained by the decedent's two children ($500,000 each); as so modified, the judgment is affirmed, with costs to the plaintiff, that branch of the motion of the defendants Hollis Women's Center, Herbert J. Mosberg, and New York Hospital Medical Center of Queens which was pursuant to CPLR 4404(a) to set aside, as excessive, so much of the jury verdict as awarded the plaintiff damages for past pecuinary loss sustained by the decedent's two children in the principal sum of $1,000,000 is granted, the order is modified accordingly, and the matter is remitted to the Supreme Court, Queens County, for a new trial on the issue of damages for past pecuniary loss, unless within 30 days after service upon the plaintiff of a copy of this decision and order, with notice of entry, the plaintiff serves and files in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to reduce the amount of damages for past pecuniary loss sustained by Natasha Zamena Bacchus-Sirju from the principal sum of $500,000 to the principal sum of $250,000 and the amount of damages for past pecuniary loss sustained by Sheik Bacchus from the principal sum of $500,000 to the principal sum of $100,000, and to the entry of an appropriate [*2]amended judgment accordingly; in the event the plaintiff so stipulates, then the judgment, as so reduced and amended, is affirmed, with costs to the plaintiff.
On July 28, 2015, Hamidan Mahamad (hereinafter the decedent) died from ovarian cancer. She was survived by two adult children, Natasha Zamena Bacchus-Sirju (hereinafter Natasha), and Sheik Bacchus (hereinafter Sheik). Natasha, as executor of the decedent's estate, commenced this action, inter alia, to recover damages for medical malpractice and wrongful death stemming from an alleged delay in the diagnosis of the decedent's ovarian cancer.
Following a jury trial, the jury found, inter alia, that the defendant Herbert J. Mosberg departed from good and accepted medical practice by failing to inform the decedent that an ultrasound revealed the presence of fluid in the cul-de-sac, a portion of the pelvis behind the uterus, by failing to order a CA 125 blood test, and by failing to refer the decedent to a gynecologic oncologist. The jury also found that such departures were a substantial factor in diminishing the decedent's chance for a better outcome. The jury awarded the plaintiff the principal sums of $2,000,000 for pain and suffering incurred by the decedent prior to her death, $1,000,000 for past pecuniary loss sustained by Natasha and Sheik ($500,000 each), from the date of the decedent's death to the date of the verdict, and $50,000 for future pecuniary loss for Natasha and Sheik ($25,000 each), intended to provide compensation for a period of five years.
Thereafter, Mosberg and the defendants Hollis Women's Center and New York Hospital Medical Center of Queens (hereinafter collectively the defendants) moved pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law, or in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial, or, in the alternative, to set aside, as excessive, the verdict on the issue of damages. In an order dated May 16, 2018, the Supreme Court, inter alia, denied the defendants' motion. The defendants appeal from the ensuing judgment entered August 8, 2018, which was in favor of the plaintiff and against them in the total sum of $3,825,085.38.
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see Berger v Shen, 185 AD3d 539, 541). Expert testimony is generally necessary to prove a deviation from accepted standards of medical care and to establish proximate cause (see Bianco v Sherwin, 165 AD3d 620, 622; Gaspard v Aronoff, 153 AD3d 795, 796). The opinions offered by an expert witness "must be based on facts in the record or personally known to the witness" (Cassano v Hagstrom, 5 NY2d 643, 646).
In order to establish proximate causation, a plaintiff must present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury (see Berger v Shen, 185 AD3d at 541; Gaspard v Aronoff, 153 AD3d at 796). A plaintiff's evidence of proximate causation "may be found legally sufficient . . . as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the plaintiff's chance of a better outcome or increased the injury" (Berger v Shen, 185 AD3d at 541 [internal quotation marks omitted]; see Gaspard v Aronoff, 153 AD3d at 796-797).
Here, viewing the evidence in the light most favorable to the plaintiff, a valid line of reasoning exists by which a rational jury could have found that Mosberg departed from good and accepted standards of medical care by not informing the decedent that her ultrasound revealed the presence of fluid in the cul-de-sac, by failing to order a CA 125 blood test, and by failing to refer the decedent to a gynecologic oncologist, and that such departures were a substantial factor in causing a delay in the diagnosis of the decedent's ovarian cancer and in diminishing her chance for a better outcome (see Cohen v Hallmark Cards, 45 NY2d 493, 499; see also Lang v Newman, 12 NY3d 868, 870; Luna v Spadafora, 127 AD3d 933, 938; Feldman v Levine, 90 AD3d 477, 478; Borawski v Huang, 34 AD3d 409, 410). Contrary to the defendants' contention, the testimony of the plaintiff's experts was based on facts in the record and expert analysis, and was not mere speculation.
Furthermore, the jury verdict in favor of the plaintiff on the issue of liability was not contrary to the weight of the evidence. A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict by any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746; Luna v Spadafora, 127 AD3d at 938; Rose v Conte, 107 AD3d 481, 483-484). Since both the plaintiff and the defendants presented expert testimony in support of their respective positions, it was within the province of the jury to determine the credibility of the experts (see Luna v Spadafora, 127 AD3d at 938; Rose v Conte, 107 AD3d at 484), and the verdict was based upon a fair interpretation of the evidence presented to the jury.
The amount of damages awarded is primarily a question for the jury, and the jury's determination will not be disturbed unless the award deviates materially from what would be reasonable compensation (see CPLR 5501[c]; Arcos v Bar-Zvi, 185 AD3d 882, 883). Here, the jury's award of the principal sum of $2,000,000 for pain and suffering incurred by the decedent did not deviate materially from what would be reasonable compensation (see CPLR 5501[c]).
Damages in a wrongful death action are limited to pecuniary injuries suffered by the distributees of the decedent's estate (see EPTL 5-4.3; Parilis v Feinstein, 49 NY2d 984, 985; Vargas v Crown Container Co., Inc., 155 AD3d 989, 993). "Loss of support, voluntary assistance and possible inheritance, as well as medical and funeral expenses incidental to death, are injuries for which damages may be recovered" (Gonzalez v New York City Hous. Auth., 77 NY2d 663, 668; see Parilis v Feinstein, 49 NY2d at 985). "In the case of a decedent who was not a wage earner, 'pecuniary injuries' may be calculated, in part, from the increased expenditures required to continue the services she provided, as well as the compensable losses of a personal nature, such as loss of guidance" (Gonzalez v New York City Hous. Auth., 77 NY2d at 668; see Estevez v Tam, 148 AD3d 779, 780). Here, the plaintiff presented sufficient evidence of pecuniary injuries sustained by Natasha and Sheik due to their mother's death (see Gonzalez v New York City Hous. Auth., 77 NY2d at 670; Johnson v Richmond Univ. Med. Ctr., 101 AD3d 1087, 1089). However, we find that the awards for past pecuniary loss deviate materially from what would be reasonable compensation to the extent indicated herein (see CPLR 5501[c]; Perez v St. Vincents Hosp. & Med. Ctr. of N.Y., 66 AD3d 663).
CHAMBERS, J.P., DUFFY, IANNACCI and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court