OPINION OF THE COURT
Per Curiam.
Order, dated Februaiy 6, 2006, affirmed, with $10 costs.
In this action to recover first-party no-fault benefits, plaintiff medical provider was awarded summary judgment on its claims for payment for three MRIs .performed on its assignor, following an automobile accident on November 27, 2003. The MRIs revealed injuries to the assignor’s neck, lower back and knee. It is uncontroverted that plaintiffs claims were timely submitted. Nor is it disputed that defendant insurer issued NF-10 forms within 30 days, contending, as the sole reason for its denials, that the assignor’s injuries did not arise out of the subject automobile accident, a conclusion based exclusively on a written accident reconstruction report (referred to by defendant as a low-impact study). The study’s conclusion that the subject accident posed “no risk of injury” to some unknown “volunteer test subjects” was reached without any consideration of the assignor’s claimed injuries. The motion court granted summary judgment to plaintiff, holding that the low-impact study and the affidavit of the engineer who drafted the report, while admissible, did not suffice to raise triable issues of fact as to whether the assignor’s claimed injuries arose out of the accident.
As a general rule, expert opinion evidence based upon accident reconstruction studies is admissible in common-law negligence actions on issues related to causation. For example, in Valentine v Grossman (283 AD2d 571 [2001]), a negligence action, the testimony of a biomechanical engineer was found probative on the issue of whether an automobile accident was severe enough to have caused the injuries sustained by the plaintiff. The engineer’s opinion therein identified a specific injury, i.e., a herniated disc, and a correlation between the injury and the biomechanics of the accident. Here, by contrast, defendant’s low-impact study was conducted without a medical file review or an independent assessment of the assignor’s claimed injuries, if indeed they were known when the report was prepared. The only aspect of the report remotely bearing on any causation issue was the conclusory statement that the ac *99 cident “posed virtually no risk of injury to voluntary test subjects.” The issue, therefore, is whether such a study is sufficient to deny summary judgment in a first-party no-fault action where plaintiff has made out a prima facie showing of entitlement to judgment.
In the typical negligence action, plaintiffs burden of establishing causation is met by a showing that the accident was a proximate cause of the claimed injuries (see Derdiarian v Felix Contr. Corp., 51 NY2d 308 [1980]). However, in an action to recover first-party no-fault benefits, a plaintiff bears no such burden and establishes his or her prima facie case by proof that the claim form was mailed and received, and that the insurer failed to pay within the 30-day statutory period (see Mary Immaculate Hosp. v Allstate Ins. Co., 5 AD3d 742 [2004]). In essence, causation is presumed since “it would not be reasonable to insist that a [medical provider] must prove as a threshold matter that its patient’s condition was ‘caused’ by the automobile accident” (Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 20 [1999]). Thus, the burden is on the defendant insurer to come forward with proof establishing by “fact or founded belief’ its defense that the claimed injuries have no nexus to the accident (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195, 199 [1997]).
While generally speaking, accident reconstruction evidence may often prove useful in explaining how an accident occurred, its probative value on issues related to causation is limited unless amplified by a meaningful medical assessment of the claimed injuries. This is certainly true in the first-party no-fault scenario, where an insurer disclaiming coverage has the burden of establishing that “the medical condition for which the assignor was treated was not related to the accident at all” (Mount Sinai v Triboro Coach, 263 AD2d at 18-19 [internal quotation marks omitted]). Whether a causative nexus exists between an accident and injury “cannot be resolved without recourse to the medical facts” (id. at 19).
Here, defendant offered no medical evidence whatsoever to demonstrate a lack of causation. It failed to perform a medical examination of plaintiffs assignor or conduct a peer review of his medical treatment in the aftermath of the accident. Absent from defendant’s denial forms was any allegation that the MRIs were not medically necessary or that plaintiffs assignor was not injured as described in the MRI reports. Nor did defendant rely on any evidence of an event or ongoing chronic condition in the *100 assignor’s past medical history to explain his injuries. Significantly, the low-impact study specifically contains a disclaimer that the engineering consulting firm which produced the report “did not perform a medical file review or an assessment of injuries alleged by [the assignor].”
Defendant’s low-impact study contains a “one size fits all,” generalized “medical” component, which does not explain how the assignor’s injuries are causally incompatible with the subject accident. As the concurring opinion correctly points out, the author of the low-impact study, in the absence of a medical review of plaintiffs injuries, had no way of knowing whether “the claimed injuries were merely bruises and contusions or a fracture when he arrived at his conclusion” (concurring op at 104).
It bears mention that the low-impact study here under review appears to have been ordered five days before the defendant insurer acknowledged having received the claims for the MRIs. Why an insurer would incur the expense of an accident reconstruction to eliminate an accident as a cause of injuries before receiving a diagnosis is yet to be explained by defendant. We acknowledge that the no-fault statute, together with the rales and regulations promulgated thereunder, do not distinguish between diagnostic testing and treatment with respect to the denial grounds available to an insurer. However, the purpose of the statutory scheme, to streamline the processing of claims for basic economic loss arising from automobile accidents, necessarily would be frustrated if an insurer could deny reimbursement to a medical provider who performs appropriate diagnostic tests in response to a patient’s complaints, based solely upon a generic brand of accident reconstruction which gives no consideration to the patient’s diagnosis or injuries.
We do not say that there can never be a situation where a low-impact study, standing alone, would suffice to create an issue of fact on causation in a first-party no-fault benefit case. Such a situation might be presented, for example, where an assignor has sustained an identifiable injury, the cause of which is so clearly unrelated to the biomechanics of the accident as to require no corroborative medical proof or where the assignor has not sustained any injury. Such is not the case here.
Finally, the concurring opinion raises an issue neither briefed by the parties nor central to the proper resolution of this case, in taking exception with our (and the motion court’s) description of the defense sought to be raised by the low-impact study *101 as a lack of coverage defense, reserving that description for injuries which “predated the accident” (concurring op at 105). Instead, the concurrence would characterize the defense advanced by the insurer, i.e., that the subject injuries were unrelated to the accident, as “a disclaimer based on the breach of a policy condition.” We disagree.
Citing as a source for guidance its previous holdings in Albert J. Schiff Assoc. v Flack (51 NY2d 692 [1980]) and Zappone v Home Ins. Co. (55 NY2d 131 [1982]), the Court of Appeals in Chubb (90 NY2d at 201), characterized as a “coverage matter” medical services rendered to treat injuries that did not arise from a covered accident, reasoning that there was no “insurance in effect” to cover such treatment. This is so whether the uncovered injuries occurred before or after the subject accident, because, simply put, the incident which caused the injuries did not fall within the four corners of the policy. Thus, unlike our concurring colleague, we find no basis to limit the applicability of a lack of coverage defense solely to cases involving “a previous injury or condition” (concurring op at 107).