Walsh v Akhund (2021 NY Slip Op 05890)





Walsh v Akhund


2021 NY Slip Op 05890


Decided on October 27, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 27, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
REINALDO E. RIVERA
COLLEEN D. DUFFY
WILLIAM G. FORD, JJ.


2017-11607
 (Index No. 27128/08)

[*1]Patricia M. Walsh, etc., appellant, 
v
Birjus G. Akhund, et al., respondents, et al., defendants.


Law Office of Brian Schochet, PLLC, New York, NY, for appellant.
Kelly, Rode & Kelly, LLP, Mineola, NY (Eric P. Tosca and Loris Zeppieri of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for medical malpractice and wrongful death, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Peter H. Mayer, J.), dated March 27, 2017. The judgment, insofar as appealed from, upon a jury verdict in favor of the defendants Birjus G. Akhund and Huntington Medical Group, P.C., on the issue of liability, is in favor of those defendants and against the plaintiff dismissing the complaint insofar as asserted against those defendants.
ORDERED that the judgment is reversed insofar as appealed from, on the law, with costs, the complaint is reinstated insofar as asserted against the defendants Birjus G. Akhund and Huntington Medical Group, P.C., and the matter is remitted to the Supreme Court, Suffolk County, for a new trial as to those defendants.
On August 28, 2002, the plaintiff's decedent came under the care of the defendant Birjus G. Akhund, an oncologist employed by the defendant Huntington Medical Group, P.C. (hereinafter together the Akhund defendants), to undergo treatment for breast cancer. The decedent developed ovarian cancer sometime before July 10, 2007, and died on September 5, 2007. On January 22, 2008, the decedent's only sister underwent genetic testing and tested positive for a harmful variant of the BRCA2 gene. At trial, the plaintiff sought to demonstrate that Akhund departed from good and accepted medical practice by failing to properly advise the decedent to seek genetic counseling that may have disclosed that the decedent inherited a harmful variant of the BRCA1 or BRCA2 gene, substantially increasing her risk of developing ovarian cancer. People who test positive for these harmful gene variants are advised to undergo surgery to remove their ovaries to decrease their chances of developing ovarian cancer.
Prior to trial, the Supreme Court granted a motion in limine to preclude the introduction of test results indicating that the decedent's sister carried the harmful variant of the BRCA2 gene as highly speculative with respect to the issue of causation. The court made this ruling despite its acceptance of the plaintiff's representation that her expert would testify that there was a 50% chance that the decedent would have had the harmful BRCA2 gene variant since her sister had tested positive for the variant, and when combined with the decedent's other risk factors, the decedent would have had a greater than 50% chance of testing positive for the harmful BRCA2 gene [*2]variant. The jury returned a verdict finding that Akhund failed to provide information regarding genetic counseling to the decedent at any time after August 28, 2002, up to and including December 12, 2005, but that departure was not a substantial factor in causing the decedent's injury or death. The court thereafter issued a judgment, inter alia, in favor of the Akhund defendants and against the plaintiff dismissing the complaint insofar as asserted against the Akhund defendants. On appeal, the plaintiff contends, among other things, that the court should have allowed into evidence the test results of the decedent's sister indicating that she carried the harmful variant of the BRCA2 gene.
"Since [t]rial courts are accorded wide discretion in making evidentiary rulings . . . , absent an abuse of discretion, those rulings should not be disturbed on appeal" (Mazella v Beals, 27 NY3d 694, 709 [internal quotation marks omitted]; see People v Carroll, 95 NY2d 375, 385). "To be admissible, evidence must be relevant and its probative value outweigh the risk of any undue prejudice" (Mazella v Beals, 27 NY3d at 709; see People v Morris, 21 NY3d 588, 595; Rojas v New York City Tr. Auth., 176 AD3d 990, 991). "Establishing proximate cause in medical malpractice cases requires a plaintiff to present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (Gaspard v Aronoff, 153 AD3d 795, 796). "'A plaintiff's evidence of proximate cause may be found legally sufficient even if his or her expert is unable to quantify the extent to which the defendant's act or omission decreased the plaintiff's chance of a better outcome or increased the injury, as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the plaintiff's chance of a better outcome or increased [the] injury'" (Lopes v Lenox Hill Hosp., 172 AD3d 699, 702, quoting Gaspard v Aronoff, 153 AD3d at 796-797 [internal quotation marks omitted]).
The evidence that the decedent's sister tested positive for the harmful variant of the BRCA2 gene was not unduly prejudicial and was relevant to the issue of proximate cause, as it would have supported the plaintiff's argument and the testimony of the plaintiff's expert that the decedent would have undergone gene testing if properly advised to do so, and more likely than not would have tested positive for the harmful gene variant and undergone a procedure to remove her ovaries, diminishing her chances of developing ovarian cancer. This evidence also would have contradicted the position of the Akhund defendants that the decedent's chances of testing positive for the harmful gene variant were as low as 2.5 to 5% (see Wilbur v Lacerda, 34 AD3d 794, 796). The weight to be accorded to this evidence is a matter to be determined by the jury (see Coates v Peterson & Sons, 48 AD2d 890). Accordingly, the exclusion of the evidence cannot be deemed harmless (see Wilbur v Lacerda, 34 AD3d at 796; Gomez v City of New York, 215 AD2d 353, 354), and we remit the matter to the Supreme Court, Suffolk County, for a new trial as to the Akhund defendants.
In light of our determination, we need not reach the plaintiff's remaining contentions.
LASALLE, P.J., RIVERA, DUFFY and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court